UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.: 12-CV-61276-DMM

ALISON OVERINGTON,

                    Plaintiff,

vs.

DEUTSCHE BANK NATIONAL TRUST COMPANY,

                    Defendant.

_____/

**RESPONSE TO DEFENDANT 'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Local Rule 7.1, Plaintiff, ALISON OVERINGTON, ["Plaintiff"] hereby responds to Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY's ["DEUTSCHE BANK"] Motion to Dismiss under Federal Rule 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully requests this Honorable Court enter an Order denying the relief sought by Defendant. In support of her Motion, Plaintiff submits the incorporated memorandum of law.

**I. INTRODUCTION AND BACKGROUND**

The action before this Court arose from DEUTSCHE BANK's failure to comply with the Truth In Lending Act, 15 U.S.C. §1601 et seq. ["TILA"].   Specifically, Plaintiff seeks the remedies as provided in TILA for Defendant's failure – by and through its agent – to identify the telephone number of the owner of Plaintiff's promissory note, contrary to 15 U.S.C. §1641(f)(2). In her one-count Complaint, Plaintiff alleges that AMERICA'S SERVICING COMPANY ["ASC"] was the servicer of the subject loan, and that "On or about June 26, 2011, ASC received

a request to identify the owner of Plaintiff's Promissory Note pursuant to TILA". [D.E. 16 at 3]. Although obligated to do so in accordance with Federal statute, "ASC's response did not provide the address or telephone number of the owner of the subject obligation". [D.E. 16 at 4]["The Response"].

## II. MEMORANDUM OF LAW

In considering a 12(b)(6) motion to dismiss, a court's review is "limited to the four corners of the complaint." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009) (quoting St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002)). Additionally, a court must view the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. Hishon v. King v. Spalding, 467 U.S. 69 (1984); Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043 (11th Cir. 2007).

Recently, United States Magistrate Judge Jonathan Goodman clearly articulated how a District Court must analyze a Motion to Dismiss:

> Under the plausibility standard announced by the Supreme Court in *Twombly*, the facts pled in the complaint must raise a reasonable expectation that discovery will reveal evidence corroborating the plaintiffs claim. 550 U.S. at 556.  When the plaintiff's have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed. *Id.* at 570.  Thus, to survive a motion to dismiss, the complaint must set forth sufficient factual matter to state a claim that is facially plausible; a claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 1950. Where the allegations in the complaint do not allow the court to infer more than the mere possibility of misconduct, the plaintiff has not shown that he is entitled to relief. *Id.*

Gentry v. Carnival Corp., 11-21580-CIV, 2011 WL 4737062 (S.D. Fla. Oct. 5, 2011)

Once a court identifies pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth, the court must next determine whether the well-pled facts state a claim to relief that is plausible on its face.'" Twombly, 550 U.S. at 570.  Plaintiff has "well-pled" the facts that gave rise to her Amended Complaint down to the exact dates ASC unlawfully failed to comply with TILA. The facts supporting each element of the cause of action are pled. Thus, Plaintiff has stated a valid cause of action.

Defendant begins by asserting that the instant actions is based on "clearly nothing more than a scheme employed by Plaintiff and her counsel to submit a spurious request for information" and that it "is inconceivable that Congress, in its efforts to help borrowers obtain access to their loan information, intended for individuals to use the statute as a means to extort settlements or damage awards by asserting manufactured, hyper-technical or meritless claims. [D.E. 20 at 2]. Even if this baseless and inflammatory accusation was true – which it is most definitely not – it would not be a reason to dismiss Plaintiff's claim, at least not at this stage of the proceedings.  Very recently, The Honorable William P. Dimitrouleas of the Southern District of Florida addressed this very same accusation Santos v. Federal National Mort. Assc., 2012 WL 3860559 (S.D. Fla. Sept. 6, 2012). There, "[t]he Defendants surmise[d] that Plaintiff did not have good faith to actually obtain information, but rather just used the QWR as a vehicle to obtain attorneys' fees". Id. at *3.  Judge Dimitrouleas was less than convinced, finding that "Plaintiff acted within his statutory rights by sending a QWR and by requesting information for which TILA mandates a response".  Id.  Further, "[a]s to the incentives for Plaintiff's lawyer filing Plaintiff's claim, Congress has incentivized attorneys to file TILA claims, presumably for policy reasons Congress found desirable. The Court will not punish Plaintiff for taking advantage of an incentive that Congress provided". Id.

The Honorable James I. Cohn of the Southern District of Florida also addressed this red

herring but "decline[d] to consider these arguments at the motion to dismiss stage, as the sole

issue on a Rule 12(b)(6) motion is whether the Complaint states a claim upon which relief can be

granted." Galeano v. Fed. Home Loan Mortg. Corp., 2012 WL 3613890 (S.D. Fla. Aug. 21,

2012).

> ### A. ASC's Response did not Comply with TILA's Requirements by not Providing the Telephone Number of the Owner or Identifying the Master Servicer

Defendant's first substantive argument asserts that the Response complied with TILA as

it provided the name and address of the owner and three telephone numbers for ASC; the

servicer. [D.E. 20 at 3]. Plaintiff acknowledges that ASC had the choice to provide the required

information for either the owner or master servicer. However, ASC chose to provide to provide

the owner's information but failed to do so adequately. The fact that ASC's phone number was

provided is of no consequence as ASC was never identified as the master servicer. DEUTSCHE

BANK concludes – without any logical or legal support – that the Plaintiff should have just

figured out that ASC was the master servicer.

As a threshold matter, "TILA is a consumer protection statute, and as such must be

construed liberally in order to best serve Congress' intent".  Ellis v. General Motors Acceptance

Corp., 160 F.3d 703, 707 (11th Cir. 1998). *See also*  Begala v. PNC Bank, Ohio, N.A., 163 F.3d

948, 950 (6th Cir. 1998) ("We have repeatedly stated that TILA is a remedial statute and,

therefore, should be given a broad, liberal construction in favor of the consumer."); Fairley v.

Turan-Foley Imps., Inc., 65 F.3d 475, 482 (5th Cir. 1995) ("The TILA is to be enforced strictly

against creditors and construed liberally in favor of consumers. . . ."). Even technical or minor

violations of the TILA impose liability. Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989).

The subject section of TILA refers to three distinct terms: servicer; owner; and master

servicer. 15 U.S.C. §1641(f)(2). Notably, the request must be a written request and must be

addressed to the servicer. <u>Id.</u>  By the very plain language of the statute, prior to making a request under 1641(f)(2), the borrower already must know the name and address of the servicer. It is clear that Congress intended the *servicer* to provide unambiguous information – name, address and telephone number – of the *owner* or *master servicer*. 15 U.S.C. §1641(f)(2) states in part:

> Under written request by the obligor, the *servicer* shall provide the obligor, to the best knowledge of the servicer, with the name, address and telephone number of the *owner* of the obligation or the *master servicer* of the obligation.

15 U.S.C. §1641(f)(2) (emphasis added).

Plaintiff does not dispute the fact that ASC's telephone numbers were provided at the top of the letter. However, the response fails to state that ASC is the *master servicer*. The clear intention of 1641(f)(2) is to allow the consumer an opportunity to obtain information as to the owner or master servicer of their loan, not to guess whether the telephone number on a letterhead is related to the ownership or master servicer of their loan. 15 U.S.C. § 1641(f)(3) states: "[f]or purposes of this subsection, the term "servicer" has the same meaning as in section 2605(i)(2) of Title 12."  The latter defines the term "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan). 12 U.S.C. 2605(i)(2). "Master servicer means the owner of the right to perform servicing, which may actually perform the servicing itself or may do so through a subservicer." 24 C.F.R. § 3500.21. Before accepting Defendant's contention that ASC complied with TILA, the Court would first have to accept as true that ASC is the master servicer of the subject loan. Defendant has presented no facts supporting this assertion other than a convoluted, confusing argument, and accepting such an assertion would be impermissible at this stage as the Court is confined to the four-corners of the complaint. <u>Wilchombe</u>, 555 F.3d at 959.

Very recently, The Honorable Kenneth A. Marra dealt with the same argument in

Kissinger v. Wells Fargo Bank, N.A., as Trustee for Soundview Home Loan Trust 2007–Opt2, Asset Backed Certificates, Series 2007–Opt2, 2012 WL 3759034 (S.D. Fla. August 30, 2012). There, Wells Fargo argued that the servicer's name, address, and phone number were provided in the response and therefore complied with TILA. Id. at 5. Judge Marra was not persuaded finding that "[t]his argument, however, is a defense that may be raised by Defendant but, at this early stage of the proceedings, the Court cannot resolve this issue as a matter of law". Id. at 6.

    A similar argument was also made and rejected in Stephenson v. Chase Home Fin. LLC, 2011 WL 2006117 (S.D. Cal. May 23, 2011).  In Stephenson, the plaintiffs sent Chase a TILA request similar to the instant case. Id. at *2.  Chase responded with a copy of the note identifying the lender, and a statement that Chase was the servicer. Id. However, the court found that Chase's argument failed because "[t]he response did not include an affirmative statement identifying the current owner of the note or the master servicer". Id.  In a footnote, the court explained that "[t]here can be multiple servicers on the same loan. A master servicer "may actually perform the servicing itself or may do so through a subservicer." Id. at Fn 2 (citing 24 C.F.R. § 3500.21(a).) The Stephenson court dismissed Chase's argument for reasons very applicable here:

> Plaintiffs sufficiently alleged that Chase's response did not comply with TILA or RESPA because it was inherently ambiguous. Although Defendants are correct that the response could be interpreted that the note has never been transferred and therefore had no endorsements, the lender continued to be the current owner of the note and that the Chase was the only servicer on the loan, Plaintiffs' interpretation of the response as simply incomplete is reasonable. Because the response was authored by Chase, Chase could have avoided the ambiguity by providing an unambiguous response.

Stephenson v. Chase Home Fin. LLC, 2011 WL 2006117 (S.D. Cal. May 23, 2011)

    Here, like in Stephenson, ASC's response is simply ambiguous and there very well may have been multiple servicers on the loan. DEUTSCHE BANK concocted this theory only after

being faced with this litigation. ASC provided the name and address of the owner of the loan, but failed to provide the telephone number in violation of TILA. Only now do they argue that the response should be construed to mean that ASC was the master servicer. The argument would be flawed even where ASC had not provided the name of the owner, a *fortiori* where they provided the name of the owner. *See also* In re Meyer, 379 B.R. 529, 552-3 (Bankr. E.D. Pa. 2007) (distinction between 'servicer' and 'master servicer' is significant).

DEUTSCHE BANK's argument of disclosure by implication or inference is not sufficient under the broad, consumer-oriented provisions of TILA. "Provide" in Section 1641(f)(2) means exactly that, not "imply" or "infer" or "suggest." The disclosure simply did not comply with TILA.

**B.  Detrimental Reliance and Actual Damages are Not Required under TILA**

Defendant next argues that the Amended Complaint should be dismissed because Plaintiff has failed to plead that she detrimentally relied on the incomplete disclosure and that she has failed to plead actual damages. [D.E. 20 at 7]. Defendant's poition is confusing as Plaintiff has not alleged that she suffered any actual damages and the extent that the *ad damnum* clause mentions actual damages – Plaintiff withdraws any claim for actual damages. Detrimental reliance is only required when pleading actual damages.  Correa v. BAC Home Loans Servicing LP, 2012 WL 1176701 (M.D. Fla. Apr. 9, 2012)(citing Turner v. Beneficial Corp., 242 F.3d 1023 (11th Cir. 2001).

In Foley, the defendant also argued "that Plaintiff's failure to allege sufficient facts showing actual damages under [TILA], or to plead any finance charges associated with statutory damages, mandates dismissal of Plaintiff's claim". Foley v. Wells Fargo Bank, N.A., 849 F. Supp. 2d 1345, 1350 (S.D. Fla. 2012). The court found the argument unavailing and expressly

adopted the holding in <u>Brown v. CitiMortgage, Inc.</u>, 817 F.Supp.2d 1328 (S.D. Ala. 2011):

> In that opinion, the court first explained that the defendant's legal theory regarding proof of actual damages was entirely without merit because "[t]he right of a TILA plaintiff to recover statutory damages, irrespective of the presence or absence of actual damages, is firmly entrenched in the case law." Id. at 1331. The court relied upon the text of 15 U.S.C. § 1640(a), as well as the Eleventh Circuit's holdings in <u>Turner v. Beneficial Corp.</u>, 242 F.3d 1023, 1026 (11th Cir.2001) ("statutory damages provide at least a partial remedy for all material TILA violations") and <u>In re Whitley</u>, 772 F.2d 815, 817 (11th Cir.1985) (for TILA violations, "statutory civil penalties must be imposed ... regardless of the district court's belief that no actual damages resulted or that the violation is de minimis") (citation omitted).
> Next, the Brown court carefully reasoned that the plaintiffs were still eligible for the statutory damages sought in their complaint, even though they did not allege that a finance charge was levied related to the alleged § 1641(g) violation. See <u>Brown</u>, 817 F.Supp.2d at 1332–37. In reaching this conclusion, the court relied upon, amongst other reasons, (1) the Supreme Court precedent of <u>Mourning v. Family Publications Service, Inc.</u>, 411 U.S. 356, 367, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) (interpreting a previous iteration of § 1640 and ruling that imposition of the minimum sanction is proper in cases where a regulation requiring disclosure is violated but the finance charge is nonexistent or undetermined); (2) a careful reading of the statutory language itself, which sets the minimum statutory penalty of $400 for loans secured by real property; (3) the Eleventh Circuit's emphasis of "the strong remedial purpose of TILA," see, e.g., <u>Bragg</u>, 374 F.3d at 1068; <u>Ellis</u>, 160 F.3d at 707, which cautions against reading *1352 § 1640(a) so narrowly as to bar TILA causes of action for disclosure violations, particularly in light of the minimum floor set forth in the text of the statute; (4) the practical effect that defendant's interpretation would likely result in statutory damages never being available for § 1641(g) violations because "[i]t is difficult to imagine a circumstance where a finance charge would be 'levied related to the alleged § 1641(g) violation.' "

<u>Foley v. Wells Fargo Bank, N.A.</u>, 849 F. Supp. 2d 1345, 1350 (S.D. Fla. 2012).

Plaintiff is not seeking actual damages and need not show any detrimental reliance. Defendant's arguments as to actual damages fails as a matter of law and Plaintiff's pleading for statutory damages states a claim upon which relief may be granted.

### C.  It is Well Established that Vicarious liability Applies to TILA

Defendant next urges the Court not to apply agency principals to TILA and this case. In the Southern District of Florida alone, three courts have ruled that vicarious liability is applicable

to TILA. *See* <u>Khan v. Bank of New York Mellon</u>, 849 F. Supp. 2d 1377 (S.D. Fla. Mar. 19, 2012); <u>Galeano v. Fed. Home Loan Mortg. Corp.,</u> 2012 WL 3613890 (S.D. Fla. Aug. 21, 2012); <u>Kissinger v. Wells Fargo Bank, N.A., as Trustee for Soundview Home Loan Trust 2007–Opt2,</u> <u>Asset Backed Certificates, Series 2007–Opt2,</u> 2012 WL 3759034 (S.D. Fla. August 30, 2012); <u>Santos v. Federal National Mort. Assc.,</u> 2012 WL 3860559 (S.D. Fla. Sept. 6, 2012).  *But see* <u>Holcomb v. Federal Home Loan Mortgage Corporation</u>, 2011 WL 5080324 (S.D. Fla.  Oct. 26, 2011).

### This Honorable Court Should Not Adopt <u>Holcomb</u>.

At the outset, Plaintiffs acknowledge this point of law is a novel one and this Court will have little guidance from its sister courts. Only a handful of courts throughout the country have actually addressed the issue of agency liability as it applies to 15 U.S.C. 1641(f)(2) to date, and to Plaintiffs' knowledge, <u>Holcomb</u> is one of only two courts to deny same. Besides the four above-mentioned opinions, <u>Rinegard-Guirma v. Bank of Am. NA</u>, 2012 WL 1110071 (D. Or. Apr. 2, 2012) also disagreed with <u>Holcomb</u> and applied vicarious liability under very similar circumstances.

The <u>Holcomb</u> court held, *inter alia,* that agency principals should not be applied to TILA. *Id.* at \*7.  In <u>Holcomb</u>, the plaintiff served its request for information under 1641(f)(2) on Wells Fargo Bank, N.A. ["Wells Fargo"]- the loan servicer- who failed to respond.  *Id.* at \*1.  Holcomb then sued Federal Home Loan Mortgage Corporation ["Freddie Mac"] as the creditor of the loan, arguing that Freddie Mac was liable for Wells Fargo's failure as its agent. *Id.* at \*5.  The court found that Freddie Mac could not be held vicariously liable for Well Fargo's failure.  *Id. at \*7.* Defendant relies solely on this one case, and urges this Court to adopt Holcomb.  Plaintiff urges this Honorable Court not to follow the holding in <u>Holcomb</u>, and instead to follow the majority of

courts that have ruled on this issue[1].

   As a threshold matter, "TILA is a consumer protection statute, and as such must be construed liberally in order to best serve Congress' intent". Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 707 (11th Cir. 1998). To deny Plaintiff relief would go against the very object and policy of TILA and reward ASC for its unlawful violation of Federal law.

   It is clear that Congress wants borrowers to able to obtain information about the ownership of their loans. Furthermore, as a matter of statutory interpretation, TILA should be construed "so as to avoid rendering superfluous any statutory language." Astoria Federal Savings & Loan Ass'n v. Solimino, 501 U.S. 104, 112 (1991). As part of that interpretation, this Court must look at TILA as a whole. The Supreme Court held long ago that "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." United States v. Boisdore's Heirs, 49 U.S. 113, 122 (1850).

   TILA is, in simple terms, a consumer protection statute. Congress provided that servicers, upon request of the borrower, must identify the owner or master servicer of the borrower's loan. 15 U.S.C. 1641(f)(2). Here, if this Court were to adopt the rationale in Holcomb, Plaintiff has no adequate remedy at law for Defendant's failure to comply with 15 U.S.C. §1641(f)(2), rendering the language in that section meaningless. Moreover, to further it remedial purpose, the Court is

---

[1] Plaintiff also notes that the applicable section of Holcomb is fairly bereft of legal analysis, whereas the opinions applying vicarious liability are far more thorough in their analyses, and will be discussed below. See Davis v. Greenpoint Mortg. Funding, Inc., 2011 WL 7070221 at *3 (N.D. Ga. Mar. 1, 2011); Khan v. Bank of New York Mellon, 12-civ-60128-WPD, 2012 WL 1003509 (S.D. Fla. Mar. 19, 2012); Rinegard-Guirma v. Bank of Am. NA, 3:10-CV-0106S-PK, 2012 WL 1110071 (D. Or. Apr. 2, 2012); Roach v. Option One Mortgage Corp., 598 F.Supp.2d 741, 753 (E.D.Va.2009); In re Bumpers, 2003 U.S. Dist. LEXIS 26255 (N.D.Ill. Sept. 11, 2003); Consumer Solutions REO, LLC v. Hillery, 2010 WL 1222739 (N.D. Cal. Mar. 24, 2010); Johnson v. Multi-Solutions, Inc., 2011 WL 3667554 at *3. (D.N.J. Aug. 22, 2011).

to liberally construe TILA's language in favor of the consumer. *See* <u>Rodash v. AIB Mortgage</u>, 16 F.3d 1142, 1444 (11th Cr.1994).

In May 2009, TILA was amended to add to Section 1640(a), a private right of action against creditors for a violation of Section 1641(f)(2). See Pub. L. No. 111-22, § 404(b), 123 Stat. 1632, 1658 (2009); 15 U.S.C. § 1640(a) ("Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under... subsection (f) or (g) of section 1641 of this title,... with respect to any person is liable to such person....").

Adding a private cause of action was, "in part, a reaction to the continuing concern that, lacking a private right of action, Section 1641(f)(2) had failed to protect homeowners from harms associated with nondisclosures." <u>Davis v. Greenpoint Mortg. Funding, Inc.</u>, 2011 WL 7070221 at *3 (N.D. Ga. Mar. 1, 2011) <u>report and recommendation adopted in part, rejected in part on other grounds,</u> 2011 WL 7070222 (N.D. Ga. Sept. 19, 2011) (citing 155 Cong. Rec. S5173–74 (daily ed. May 6, 2009).)   "Furthermore, the amendment responded to concerns voiced by various consumer protection agencies and illustrated by a 2007 TILA case that highlighted the disastrous effects that a failure to disclose pursuant to a Section 1641(f)(2) request can have upon a consumer's ability to exercise her rights." <u>Id.</u> *See also* 155 Cong. Rec. S5173–74 (daily ed. May 6, 2009); *see* <u>In re Meyer</u>, 379 B.R. 529, 553–554 (Bkrtcy.E.D.Pa. Nov.29, 2007) (describing situation where consumers attempted to exercise rescission rights pursuant to TILA, servicer refused to reveal identity of note holder, and statute of limitations for the cause of action expired).

In proposing the amendments to TILA aimed at helping borrowers identify the owner of their mortgage obligations, Senator Barbara Boxer stated:

> "Federal law does require that the servicer tell the homeowner the identity of the person holding their mortgage. ...While servicers are required to disclose this information, there are no penalties in the law for noncompliance and no remedies for a homeowner faced with a recalcitrant servicer."

*See*, 155 Cong. Rec. S5098 (May 5, 2009). "Thus, it is apparent that Congress intended to hold creditors liable for violations of Section 1641(f)(2)." Davis, at *3.

Analyzing Holcomb and the other opinions on point, Judge Dimitrouleas disagreed with Judge Hurley and was persuaded "that Congress meant to extend agency principles to creditors or make creditors liable under § 1641(f)(2) by intentionally inserting the private right of action for violations of § 1641(f)(2) into § 1640(a), a remedy section that provides for civil liability against creditors." Khan, at *5. The Khan court then rejected defendant's position that it cannot be vicariously liable for damages under § 1641(a) as a result of its servicers alleged failure to properly respond to plaintiff's §1641(f)(2) request for information, and denied the motion to dismiss. *Id.*

The Honorable James I. Cohn of the Southern District of Florida found Khan's reasoning persuasive in Galeano v. Fed. Home Loan Mortg. Corp.., 2012 WL 3613890 (S.D. Fla. Aug. 21, 2012)(The undersigned, like Judge Dimitrouleas, "is persuaded that Congress meant to extend agency principles to creditors or make creditors liable under § 1641(f)(2) by intentionally inserting the private right of action for violations of § 1641(f)(2) into § 1640(a), a remedy section that provides for civil liability against creditors.")

Judge Marra agreed with the overwhelming majority of courts that have analyzed this issue. Kissinger, at 10. "This Court chooses to follow the reasoning of the courts finding vicarious liability. There is no question that Congress created a cause of action as set forth in 15 U.S.C. § 1640(a). At the same time, Congress mandated that servicers would not be liable for a TILA violation. 15 U.S.C. § 1641(f). As such, the Court concludes that Congress intended the

servicer's agent to be liable; otherwise, Congress created a cause of action with no one to sue for relief." Id.

As the Holcomb court noted, the court in Hillery, was faced with a similar dilemma. Consumer Solutions REO, LLC v. Hillery, 2010 WL 1222739 (N.D. Cal. Mar. 24, 2010).  In Hillery, the court addressed the main rationalization the Holcomb put forth; namely, that 15 U.S.C. 1641(g)[2] was the vehicle in which congress intended to impose liability on the creditor. Id. at *4. The court was not persuaded, finding:

> If § 1641(g)(1) simply required a creditor to provide the above information *upon a request by the obligor,* as in § 1641(f)(2), this would be strong evidence that Congress enacted §1641(g)(1) to effectuate a change to § 1641(f)(2)-by expanding liability from the servicer to the creditors. This would imply that prior to 2009, liability was limited to the servicer. But §1641(g)(1) does not merely require action from a creditor only upon a request by the obligor. Rather, §1641(g)(1) puts an affirmative obligation on the creditor to act, regardless of the obligor's conduct. By doing so, it does far more than arguably expand the list of parties who may be liable under §1641(f)(2); it changes the substantive obligations of creditors. Therefore, contrary to what [plaintiff] argues, §1641(g)(1)'s enactment does not implicitly presume that a creditor is not liable under §1641(f)(2) for its servicer's failure to respond to a borrower's request for information."

Consumer Solutions REO, LLC v. Hillery, 2010 WL 1222739 at *4.

The Hillery court acknowledged the limited case law on the issue, but noted, "what little case law there is indicates that liability based on an agency relationship is generally cognizable under TILA." Id. (citing Roach v. Option One Mortgage Corp., 598 F.Supp.2d 741, 753 (E.D.Va.2009); In re Bumpers, 2003 U.S. Dist. LEXIS 26255 (N.D.Ill. Sept. 11, 2003). The court "consider[ed] the importance of providing borrowers with information about the current

---

[2] "In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including [*inter alia* ] the identity, address, telephone number of the new creditor ....15 U.S.C. § 1641(g)(1).

lender under § 1641(f)(2) in the increasingly prevalent context of, *e.g.,* securitized loans where the identity of the lender may be difficult to ascertain. Absent an indication of Congressional intent to the contrary, the Court holds that agency principles apply to §1641(f)(2)."   <u>Hillery</u>, at *4.

　　　Analogously in <u>Davis</u>, the court applied agency principles to §1641(f)(2) after a thorough analysis. <u>Davis v. Greenpoint Mortg. Funding, Inc.</u>, 2011 WL 7070221 at *3 (N.D. Ga. Mar. 1, 2011).

> To reconcile the substantive obligation imposed upon servicers in Section 1641(f)(2) and the remedial obligation levied upon creditors in Section 1640(a), this Court reads TILA to allow the application of agency principles so that creditors may be held vicariously liable for the acts of servicers as Plaintiff urges. By its plain language, 15 U.S.C. § 1641(f)(2) imposes a disclosure obligation that is directed to servicers only. Thus, it is a servicer's failure to act that gives rise to the private right of action that is authorized in 15 U.S.C. § 1640(a). *See* 15 U.S.C. § 1641(f)(2); 15 U.S.C. § 1640(a). TILA, however, does not contain any provisions allowing a consumer to bring a civil action against a servicer for a violation of Section 1641(f)(2). Section 1641(f)(2) does not provide for a servicer's liability for damages if it fails to comply with the section's obligations, 15 U.S.C. § 1641(f) (2), and the only provisions within Section 1641 concerning servicer liability limits a servicer's liability to situations in which the servicer was once an assignee or owner of the loan. 15 U.S.C. § 1641(f)(1). […] Because TILA does not impose liability upon a servicer who is not an owner or assignee of a note, the private right of action that Section 1640(a) creates would be meaningless, unless agency principles permit a creditor to be held liable for Section 1641(f)(2) violations committed by its servicer. To avoid rendering Section 1640(a) superfluous, this Court concludes that agency principles apply, and creditors may be held vicariously liable for the Section 1641(f)(2) violations of their servicers. […] This conclusion gives force to the disclosure provision in Section 1641(f)(2) and comports with the intent of TILA to be "remedial in nature ... and ... [to] be construed liberally in order to best serve Congress's intent ." *Ellis v. Gen. Motors Acceptance Corp.,* 160 F.3d 703, 707 (11th Cir.1998).

<u>Davis v. Greenpoint Mortg. Funding, Inc.</u>, 2011 WL 7070221 at *4 (N.D. Ga. Mar. 1, 2011).

　　　The <u>Davis</u> and <u>Hillery</u> courts are an example of the many Federal courts to apply vicarious liability to TILA. "Although this district has not addressed whether agency principles apply to TILA claims, we will presume that agency principles do apply in light of TILA's broad

construction as a remedial statute, *see* <u>Roberts v. Fleet Bank</u>, 342 F.3d 260, 266 (3d Cir.2003), as well as the fact that other districts have found that these principles do apply." <u>Johnson v. Multi-Solutions, Inc.</u>, 2011 WL 3667554 at *3. (D.N.J. Aug. 22, 2011) (citing <u>Consumer Solutions REO, LLC v. Hillery</u>, 2010 WL 1222739, at *4 (N.D.Cal. Mar.24, 2010); <u>Roach v. Option One Mortg. Corp.</u>, 598 F.Supp.2d 741, 753 (E.D.Va.2009); <u>In re Bumpers</u>, 2003 WL 22119929, at *7–9 (N.D.Ill. Sept.11, 2003). *See also* <u>Ording v. BAC Home Loans Servicing, LP</u>, 2011 WL 99016 (D. Mass. 2011) (while servicer must disclose the identity of the holder, it is the holder who has liability under TILA).

Most recently, Magistrate Judge Papak of the District of Oregon, analyzed <u>Khan</u>, <u>Holcomb</u>, and many of the other cases cited supra. <u>Rinegard-Guirma v. Bank of Am. NA</u>, 2012 WL 1110071 (D. Or. Apr. 2, 2012). Judge Papak concluded that "the <u>Davis</u> court's approach [was] more persuasive. First, <u>Holcomb</u> is suspect because it completely ignores the language and effect of the 2009 TILA amendments, which bear directly on a creditor's liability under Section 1641(f). Moreover, although only a handful of courts have addressed this issue, the trend is towards recognizing creditor liability for servicer's violations of § 1641(f)." <u>Rinegard-Guirma</u>, 2012 WL 1110071 at *9.

TILA is a very detailed statute and had congress intended to limit vicarious liability, it would have done so just as it did for assignee liability in §1641(a) and servicer liability in §1641(f)(1). Additionally, the 2009 amendments to TILA took place at a time when the country was in the midst of a massive nation-wide foreclosure crises, and the amendments were designed to afford additional protections to the consumer. "Given that the servicer cannot be held liable for damages for a §1641(f)(2) violation, and the very nature of such a violation implies the debtor will not know the identity of and contact information for the owner of the note, the debtor

would be left essentially without a remedy absent some form of vicarious liability. Such a result would seem particularly problematic in the not uncommon situation where a loan has been resold or packaged and securitized, leaving the ultimate owner of obligation several steps removed from the borrower."  Consumer Solutions REO, LLC v. Hillery, 2010 WL 144988 (N.D. Cal. Jan. 8, 2010) *adhered to on reconsideration,* Consumer Solutions Reo, LLC v. Hillery, 2010 WL 334417 (N.D. Cal. Jan. 28, 2010).[3]

Congress was well aware that the vast majority of mortgages were securitized and serviced by servicers. Congress took the extra step of including §§1641(f)(2) and (g)(1) which serve different purposes. Congress also added a private cause of action for a violation of §1641(f)(2), which would be made superfluous if the Court will not apply vicarious liability. Congress' "intentional insertion of the private right of action for violation of § 1641(f)(2) into a remedy section that provides for civil liability against creditors suggests that Congress did exactly" what the Holcomb court suggests it should have done. Davis  2011 WL 7070221 at *5.

## CONCLUSION

"TILA is a consumer protection statute, and as such must be construed liberally in order to best serve Congress' intent".  Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 707 (11th Cir. 1998).  To deny Plaintiff relief would go against the very object and policy of TILA and reward DEUTSCHE BANK NATIONAL TRUST COMPANY for its unlawful violation of Federal law. While the violations may indeed be merely a technical violation, "[s]trict technical compliance, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant". Parker v. DeKalb Chrysler Plymouth, 673 F.2d 1178 (11th Cir. 1982). For the reasons discussed above, Plaintiff, ALISON

---

[3] Although the style is the same, this is an opinion on a separate motion than that cited *supra.*

OVERINGTON, respectfully requests this Honorable Court deny Defendant's Motion to Dismiss, order Defendant to file an Answer to Plaintiff's Amended Complaint, and grant such other relief as is just and proper.

Respectfully submitted,

LOAN LAWYERS, LLC
*Attorneys for Plaintiff*
377 North State Road 7, Suite #202
Plantation, FL 33317
Telephone:     (954) 523-4357
Facsimile:     (954) 581-2786

By:     s/Yechezkel Rodal_____
        YECHEZKEL RODAL ESQ.
        FBN 091210

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on October 3, 2012 with the Clerk of Court using CM/ECF along with having served all counsel of record or pro se parties identified on the service list incorporated herein in the manner specified, either via transmission of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notice of Electronic Filing.

Naomi Massave Berry, Esq.
Carlton fields P.A.
100 S.E. Second Street, Suite 4200
Miami, FL 33131-2114
Counsel for Defendant DEUTSCHE BANK
Service by CM/ECF

LOAN LAWYERS, LLC
*Attorneys for Plaintiff*
377 North State Road 7, Suite #202
Plantation, FL 33317
Telephone:     (954) 523-4357
Facsimile:     (954) 581-2786


/s/Yechezkel Rodal_____
YECHEZKEL RODAL ESQ.
FBN 091210
E-Mail: chezky@floridaloanlawyers.com